## DECATUR COUNTY *v.* PRAYTOR, HOWTON & WOOD CONTRACTING COMPANY.

1. The motion to dismiss the application for certiorari is without merit, and is denied.
2. The case made in the petition is not one in equity; and the Court of Appeals had jurisdiction of the writ of error to review the rulings of the trial court therein excepted to.
3. Where plans for the erection of a bridge over a river showed approximate elevations of the foundations of the piers of the bridge above sea level, and the specifications contained a statement that these elevations represented the foreseen conditions, but, in case the actual elevations

Bridges, 9 C. J. p. 441, n. 39.
Certiorari, 11 C. J. p. 157, n. 56.
Courts, 15 C. J. p. 1038, n. 50; p. 1039, n. 54.

necessary to obtain foundations satisfactory to the engineer should differ from those shown on the plans, an allowance would be made for or against the contractor at an equitable unit price to be estimated by the engineer, such representation, that the approximate elevations shown on the plans represented the foreseen conditions, though untrue, would not authorize the contractor to abandon the work because the piers of the bridge could not be built at the approximate elevations shown upon the plans, and sue the county upon the theory that such representation was an implied warranty that under existing conditions the foundations of the piers could be built at the approximate elevations shown in the plans, and that the falsity of the representation amounted to a breach of such warranty, for which the county would be liable in damages to the contractor; the contract for the building of the bridge providing for the payment to the contractor for material furnished and labor done in erecting the bridge at unit prices; and the article containing such representation and other provisions of the specifications showing that the county did not intend to impliedly warrant that the location of the foundations of the piers could be effected at such approximate elevations, but said article containing such representation and such other provisions showing a contrary implication.

No. 5997. FEBRUARY 14, 1928. REHEARING DENIED FEBRUARY 28, 1928.

Certiorari; from Court of Appeals. 36 *Ga. App.* 611.

Praytor, Howton & Wood Contracting Company brought suit against Decatur County and the State Highway Department of Georgia, in two counts. The first count as amended contained the following allegations: (1) Petitioner is an Alabama corporation. (2) The County of Decatur is a regularly organized county of Georgia. (3) The State Highway Department of Georgia is created by the laws thereof, and is authorized to sue and be sued. Its principal office is in Fulton County. (4) On March 24, 1922, petitioner entered into a contract with the County of Decatur for the construction of a concrete and steel bridge over Flint river, at Bainbridge. Copies of the contract, and of the specifications for the construction of said bridge are attached as exhibits to the petition. Under it the plaintiff agreed to furnish all the materials and perform all the work and labor required in the construction of a concrete and steel bridge over Flint river at Bainbridge, in strict conformity with the provisions of the contract and the notice to contractors and the proposal of petitioner, and the plans and specifications approved by the State highway engineer or his assistant, the originals of which are on file in the office of the State highway engineer, copies of which are attached to the contract and made a part thereof, with "the same effect as if the same had been set forth in the body" thereof. The county

agreed to pay to the contractor for such work when completed, at unit prices, in accordance with the provisions of the contract, approximately $154,040. The work was to be done in accordance with the laws of the State and under the direct supervision and to the entire satisfaction of the State Highway Department, subject at all times to the inspection and approval of the United States Secretary of Agriculture or his agents, and in accordance with the rules and regulations of the act of Congress providing that the United States shall aid the States in the construction of rural post-roads. This contract was under seal, was executed by the State Highway Department of Georgia, approved by the State highway engineer, ratified and approved by the County of Decatur, and was duly executed by the plaintiff. (5) The contract was duly entered upon the minutes of the commissioners of roads and revenues of Decatur County, and upon the minutes of the State Highway Department. (6) The County of Decatur is indebted to petitioner in the sum of $136,172.12 in the manner and form hereinafter alleged.

(7) Plaintiff entered into said contract in good faith and under the firm belief that all statements made . in the contract, specifications, and plans were true and correct. (8) Under the terms of said contract petitioner constructed pier (e) on the west bank of the river, and partially completed pier (b) on the east bank of the river, and built and completed the approaches up to said piers on both sides of the river, in accordance with the plans and specifications. It worked on pier (b) for about one year. Cofferdams were driven about the same; said pier was excavated to about an average elevation of 39 feet above sea level; a great deal of pumping and rebracing had been done, all of which was duly accepted by the county, and paid for in accordance with the terms of the contract, less 15 per cent. of the value of said completed work, which amounted to $10,380.07, which was reserved by the county as provided in the contract. (9) After completing the work specified in the preceding paragraph, petitioner commenced work on pier (d), located near the center of the river. The plans and specifications showed that pier (d) was to be excavated to an elevation about 30 feet above sea level. Under instructions from Searcy B. Slack, the authorized engineer of the State Highway Department, plaintiff placed steel piling around said pier and

commenced excavating. Upon reaching elevation 40, petitioner drove an iron pipe into the bed of the river to a depth of about 10 feet below elevation 30, and found no rock on which pier (d) could be located. When plaintiff discovered this material variance between the contract and the facts, plaintiff immediately notified the State Highway Department of this condition, and at the request of the department held a conference in Atlanta, and plaintiff stated to the department the condition which it found to exist in pier (d). Said department acted in all these matters for itself and for the county, and declined to permit petitioner to stop, but ordered it to proceed to an excavation of 30, and stated to petitioner that if it was found at elevation 30 that a satisfactory base for said pier could not be located at that point, a new contract would be made with petitioner relative to said pier. Petitioner resumed the work and renewed the excavating, and upon reaching an elevation of 36, said department, through its engineer, ordered the excavating stopped, took over the barge and equipment of petitioner, and commenced boring in pier (d) for the purpose of ascertaining the depth to which said pier would have to go. The boring under the direction of the department showed that it would be necessary for said pier to go at least to the depth of elevation 14. When this was discovered a new contract was not made with petitioner, but said department, retaining possession of petitioner's barge and equipment, proceeded to bore pier (c), which is located nearer the eastern bank of the river than pier (d). The plans and specifications for pier (c) showed that the excavation would go to about elevation 36 feet above sea-level. Boring for pier (c) went in one hole to 8 feet seven inches below sea level, striking a cavity about 2 feet above sea level, and dropping through said cavity to eight feet and seven inches below sea level, at which level a flowing well was struck. Notice of the material variance between the actual conditions of the surface at the point where pier (d) was to be erected, and the conditions as represented in the plans, was given to the State Highway Department through its engineer in charge of the work at the time, and the conference above referred to was held with the chairman of the highway board, the State highway engineer, and the engineer in charge of said project. The statement that a new contract would be made with petitioner relative to said piers was made to petitioner by the chairman of said board.

(10) Said piers were to be of solid concrete, 30x32 feet.    (11) As soon as petitioner discovered the depth to which said piers would have to go, and that the actual subsurface condition was not as had been represented to it by the plans and specifications submitted to bidders as a basis from which proposals were to be submitted, petitioner notified the State Highway Department, which was acting for itself and the County of Decatur, that the contract could not be carried out in accordance with the plans and specifications, and that the same was breached.    (11-a) The representations as to the subsurface of the river at which said piers were to be based, and the elevation to which excavations would have to go as set out in said plans, were regarded as material and vital by all of the parties, for the reason that a material variance from the actual subsurface condition as represented by said plans would necessitate, for the purpose of excavation and the present construction of said piers, an entirely different character of equipment from that which would be necessary if the subsurface conditions were as represented in said plans, in that a larger boom and heavier engine to handle the same would be required, and a heavier boiler to supply the engine, and heavier ropes, sheaves, and blocks would be required.    (12) Before said contract was entered into, Searcy B. Slack was the lawfully authorized engineer and agent representing the defendants in all matters relating to obtaining the contract and the construction of the bridge, and petitioner asked Slack at Albany if core-drills had been made in piers (d) and (c), and if the highway department was certain that the excavations specified were correct.    Petitioner stated to Slack in his representative capacity that it would not bid on said project unless core-drills had been made, and it was certain that the depths would not go below elevation 30, for the reason that petitioner was not financially able to enter into a contract to construct any bridge where the depth required was greater than elevation 30.    In reply, Slack, acting expressly for defendants, specifically represented to petitioner that core-drills had been made, and that the elevations specified in the plans were certain and fixed.    Petitioner absolutely relied on said representations and plans in bidding upon said work.

In addition to the above, the general provisions attached to and made a part of said contract contain the following statement:

"34. Foundation. The elevation shown on the plans for the bottom of the piers, abutments, or footings, represent the foreseen conditions." The inquiry of Slack was made in behalf of petitioner by D. M. Praytor and W. C. Howton, its president and secretary, during the summer of 1920, and was directed to Slack, as he then and there well knew, for the purpose of ascertaining whether or not proper and adequate means had been taken by the State Highway Department to determine the actual surface conditions of the river where said piers were to be located and ascertain whether said plans could be relied upon as correctly showing the actual subsurface conditions. (13) The foreseen conditions as appear in the plans and specifications were false and untrue, and were known so to be by the State Highway Department, by each member thereof, by the State highway engineer and his assistant, and by the county, including each member of its board of commissioners, when they were made a part of said plans and specifications; and said false and untrue foreseen conditions were made for the purpose of inducing, and in fact they did induce, petitioner to bid on said project and enter into the contract, which it would not have done had the true conditions been known to it. (14) Praytor, president, and A. E. Wood, vice-president of petitioner, looked at the site of said bridge before making this contract. It was impossible for petitioner to obtain any idea as to piers (c) and (d), on account of the fact that each of said piers was located near the center of the river and in the bed thereof, and as only approximately 30 days elapsed between the time notice to contractors was published by the highway engineer and the commissioners of the county, and the date of the proposals of persons bidding were to be submitted within such a short space of time that it would have been impossible for petitioner to determine the actual condition and the composition of the bed of the river where such piers were to be located. Therefore it was compelled to rely upon the plans and specifications furnished by the State Highway Department, and upon said representations made by Slack as to said borings; and petitioner did rely absolutely upon said representations, without any knowledge whatever relating to said piers except as obtained through said representation and contract.

(15) After petitioner had completed the work specified above, it was informed that core-drills had never been made for the

bases of piers (c) and (d), but that the county had had core-drills made for piers (c) and (d) to be located at a different place from that at which the piers for this bridge were finally located by this defendant. The original plans called for this bridge to be located at a point on the river further north than the place at which the same is now located, and the county had core-drills made for the original location, but no core-drills were made for the present location. The core-drills made of the original location were only a few feet north of the present location. The county furnished said core-drills and the measurement thereof to the State Highway Department, and full information and knowledge as to said core-drills was had by the county and the State Highway Department and was in possession of Slack, the agent of the parties, at the time he made the representations hereinabove specified; and said core-drilling so made showed that it would be impossible to locate the foundation for pier (d) at elevation 30, or anywhere near thereto, but that the same could not be located above elevation 20; and the core-drilling for pier (c) showed that the pier could not be located at elevation 36, or anywhere near that elevation, and could not be located above elevation 20. (16) These core-drills or soundings made by the county were never furnished or shown to petitioner, nor did petitioner have any knowledge relating to them until after the signing of the contract. Had they been furnished to petitioner, or had petitioner known or suspected the representations as made by Slack and by the plans were not true and correct, and were not based upon borings, it would not have entered into said contract. If said borings had been exhibited to or accessible to petitioner, it would have seen that the elevation was improperly placed, and that the piers could not be located at the elevation specified in the plans; but it had no knowledge or information relating thereto, and did not doubt the plans and representations made by Slack, and accepted them and acted upon them without any knowledge of their falsity. Petitioner did not receive this information until July or August, 1923, after all the work it did had been done. (17) As soon as petitioner ascertained that the representations were untrue, it notified the defendants that it would not proceed further with said contract and that the same was canceled. (18) To construct the bridge would require such material changes in the plans and specifica-

tions and such additional expense that said contract should be declared null and void. (19) It was necessary in the proper construction of said bridge, which was of extremely heavy concrete, that the piers be located upon what is known as bed-rock, or solid rock, and the same could not be located on boulders or anything other than bed-rock. (20) It being impossible to locate the beds of the piers at the point specified in the plans and specifications, to locate them at the depths shown by the borings would create such a tremendous change in the plans and specifications and necessitate the expenditure of such a large sum of money, that petitioner was unable to reach any agreement with the defendants relative to any new contract to build the bridge, or to make any change in the present contract to meet the existing conditions. (21) It would be impossible to construct said bridge on the original plans and specifications.

(22) The defendants have accepted the bid of and agreed to enter into a new contract with the Hardaway Contracting Company to build said bridge; and the defendants by said new contract acknowledge that the bridge can not be completed or built on the plans and specifications forming a part of the contract with petitioner. Said new contract provides an entirely new and different method for substructure, and will attempt to locate the piers on steel cylinders filled with concrete, supporting a concrete head, and will not attempt to locate said piers on bed-rock or anything other than cylinders with concrete head. The additional cost of building the bridge on such new plan and according to the new contract will be at least $250,000, exclusive of $100,000 worth of work which has already been done on the bridge. (23) If the plans and specifications had been true and correct, petitioner's bid of $154,000 would not only have been ample to complete said bridge, but would have brought to petitioner a profit of $30,808. (24) The value of the work performed by petitioner under the terms of said contract, and duly accepted by the defendants, was $69,204.66. The estimate therefor was approved by the county, the State Highway Board, and its engineer in charge of said work, and petitioner has fully performed the work so accepted and approved; and said sum of $69,204.66, less 15 per cent. thereof, was duly paid over to petitioner, the defendant reserving therefrom, as provided in said contract, 15 per cent. of the value of the work,

amounting to $10,380.07. Had the representations set forth in the contract and plans and specifications been true, petitioner could have completed said contract and made a profit of $38,-510.00. At the time petitioner was compelled to abandon further work on said project, 39.3 per cent. of the work and material to be furnished in the performance of said contract had been performed and had been furnished; and had it been possible for it to perform and complete the remainder of said contract, and had it been permitted to do so, its profits arising out of the performance and completion of the remainder of said contract would have been $26,-841.47. By reason of the facts above set out and the breach of said contract by the defendant, the defendant is liable to it in the sum of $10,380.07, the retained per centage on account of the work actually done and material actually furnished under the contract; and in addition thereto is liable to it in the sum of $26,-841.47 as profits which it would have made out of the completion of the remainder of the work to be done under said contract, and which sum it lost by being prevented from performing the remainder of said contract; and for the recovery of said two items petitioner prosecutes this its first count of its petition. Petitioner prayed for process, and for judgment against the defendant for the amounts specified.

The second count of the petition as amended is identical with the first count, with the following exceptions: Instead of alleging that the foreseen conditions, as shown in the plans and specifications, were false and untrue, and known so to be when made, and that they were made for the purpose of inducing, and did induce, petitioner to enter into the contract, it is alleged that the contract was based upon the existence of essential and material facts, to wit: that solid rock, or bed-rock, could be found at elevations set forth in the plans, which facts do not exist; but had petitioner known that they did not exist, it would not have entered into the contract; and that it was in no condition, either financially or physically, to go below the elevations set forth in the contract, which fact was known to the defendant. In lieu of the allegations to the effect that core-drillings had been made at a different location for the bases of piers (c) and (d), and that those drillings were known to the defendant, but not to petitioner, and showed subsurface conditions essentially different from those contained in

the plans and specifications, it was alleged in the second count that petitioner entered into the contract in ignorance of the true conditions, which were fundamental, without any negligence on its part, and that it was assumed by both parties to the contract that solid rock or bed-rock could be reached at the elevations called for in the specifications and plans, which facts were essential and fundamental, and did not in fact exist, their existence being so vital that petitioner would not have entered into the contract had it known that those conditions, as shown by the plans and specifications, did not exist. The prayers of the second count were for process; and "That this court, exercising its equitable jurisdiction, decree that the alleged contract be rescinded, and that petitioner have judgment against defendants for the amount specified in the petition." Pertinent portions of the specifications and the contractor's proposal appear in the opinion.

The County of Decatur and the State Highway Department demurred jointly and separately, upon the grounds, (a) that each count set forth no cause of action against them or either of them; (b) that there is no statute or law authorizing suit against the defendants or either of them upon such alleged cause of action as is attempted to be set forth in each count of the petition; (c) that the plans and specifications referred to in each count constitute a part of the contract, and unless said plans and specifications are set forth in each count or as an exhibit therewith, it is impossible to determine whether or not the contract was breached by the defendants, as alleged; and (d) that there is a misjoinder of parties defendant, in that the State Highway Department of Georgia is not a proper party defendant in the cause. The defendants demurred specially upon various grounds. The court overruled the demurrers, and Decatur County excepted, and took the case to the Court of Appeals. That court held that the petition, properly construed, made a plain action at law based on a breach of a contract, and that it had jurisdiction of the case, and refused to transfer the case to this court. This ruling is excepted to in the application for certiorari. The Court of Appeals affirmed the judgment overruling the demurrers. To this judgment the county excepts in its application for certiorari, and alleges that the same was contrary to law, for various reasons assigned. The defendant in error moved to dismiss the application for certiorari, upon

the grounds (1) that it does not present any question of gravity and importance; (2) that none of the attempted assignments of error comply with the requirements of rule 2 of this court governing applications for writs of certiorari; (3) that the only paragraphs of the petition for the writ of certiorari which attempt to assign any error with reference to any question that could be of any importance, except to the parties, are paragraphs 10 and 11, and that they wholly fail to comply with said rule 2, which requires that the petition must specify plainly the decision complained of, and the alleged error; and (4) that the petition for certiorari proceeds upon the theory that the Court of Appeals assumed certain things, overlooked other things, and did not decide other things, but does not plainly specify any error committed by the Court of Appeals, or any error upon any question of gravity or importance.

*H. G. Bell* and *Pottle & Hofmayer*, for plaintiff in error.

*Jones, Evins, Moore & Powers, Copeland & Dukes, T. G. Connell*, and *E. K. Wilcox*, contra.

HINES, J. (After stating the foregoing facts.)

1. The writ of error in this case was returnable to the Court of Appeals. Counsel for the plaintiff in error moved that court to transfer the case to this court, upon the ground that that court was without jurisdiction to decide the case. The alleged lack of jurisdiction was based upon the ground that the second count of the petition made a case in equity, of which the Court of Appeals was without jurisdiction, and of which this court had jurisdiction, to decide the questions raised in the bill of exceptions. The Court of Appeals refused to transfer the case to this court, holding that the petition, brought in two counts, when properly construed, made in each count a plain action at law based upon a breach of contract, and that it had jurisdiction of the case. *Decatur County* v. *Praytor, Howton & Wood Contracting Co., 36 Ga. App.* 611 (137 S. E. 918). In its application to this court for certiorari to review rulings made by the Court of Appeals, the plaintiff in error excepts to the ruling of the Court of Appeals touching its jurisdiction, and seeks to have the same reviewed and reversed. So we are first confronted with the question: Did the Court of Appeals have jurisdiction of this cause? The proper answer to this question depends upon whether or not the case is one in equity. It is

conceded by counsel for the county that the first count of the petition, if it sets forth any cause of action, makes one at law.

The second count of the petition, briefly stated, makes this case: The contracting company and the county entered into a contract for the erection of a bridge over Flint river at Bainbridge. The contractor agreed to furnish all materials and perform all the work required in the construction of the bridge in strict and entire conformity with the provisions of the contract, the notice to contractors, the proposal of the contractor, and the plans and specifications prepared by the State highway engineer or his assistant. The county agreed to pay to the contractor for such work when completed, in accordance with the provisions of the contract, the unit prices set forth in the contractor's proposal, amounting approximately to $154,000, payments to be made as provided in the specifications. The plans and specifications provided that the foundations of the piers of the bridge should be at certain elevations above, sea-level. The foundation of pier (d) was to be excavated to an elevation about 30 feet above sea-level. The foundation of pier (c) was to be at an elevation about 36 feet above sea-level. The specifications contained this provision: "The elevation shown on the plans for the bottom of piers, abutments, or footings represent the foreseen conditions. In case the actual elevations necessary to obtain a foundation satisfactory to the engineer differ from those shown on the plans, an allowance will be made either for or against the contractor at an equitable unit price to be estimated by the engineer." The contractor constructed pier (e) on the west bank of the river, and partially completed pier (b) on the east bank of the river, and built and completed the approaches to piers on both sides of the river, in accordance with the plans and specifications. The work on said piers and the approaches thereto was duly accepted by the county, and paid for in accordance with the terms of the contract, less 15 per cent. of the amount or value of said completed work, which percentage amounted to $10,-380.07, and was reserved by the county as provided by the terms of the contract. After completing said work the contractor commenced work on pier (d) located near the center of the river. It was then discovered that the foundations of piers (d) and (c) could not be erected at the elevations designated in the plans and specifications. The foundation of pier (d) would have to be con-

48

structed at an elevation of at least 14 feet above sea-level, and that of pier (c) would have to be constructed at an elevation of eight feet seven inches above sea-level. Petitioner alleges that the representation in the plans and specifications, as to the elevations to which excavations would have to go for the foundations for the piers of the bridge, were regarded as material by the parties to the contract, for the reason that a material variance from the subsurface conditions as represented by the plans would require larger, heavier, and more expensive equipment from that which would be necessary if the subsurface conditions were as represented in the plans; that, before said contract was entered into, it inquired of the lawfully authorized engineer, representing the county and the State Highway Department in all matters relating to obtaining the contract and the construction of the bridge, if the State Highway Department was certain that the excavations specified were correct, petitioner stating to the engineer that it would not bid on said project unless core-drills had been made, and it was certain that the depth would not go below elevation 30, for the reason that petitioner was not financially able to enter into a contract to construct any bridge where the depth required was greater than the above elevation. In reply the engineer represented to petitioner that core-drills had been made, and that the elevations specified in the plans were certain and fixed; and petitioner relied on such representation and said plans in bidding upon said work, and in entering into the contract for the construction of the bridge. Petitioner further alleges that the contract was based upon the existence of essential and material facts, to wit: that solid or bed-rock could be found at the elevations set forth in the plans, which facts did not exist; and had petitioner known that they did not exist, it would not have entered into the contract, as it was in no condition, either financially or physically, to go below the elevations set forth in the contract, which fact was known to the county. Petitioner further alleges, that it entered into the contract in ignorance of the true conditions, which were fundamental, without any negligence on its part, and that it was assured by both parties to the contract that solid or bed-rock could be reached at the elevations called for in the specifications and plans, which facts were essential and fundamental and did not exist, their existence being so vital that petitioner would not have en-

tered into the contract had it known that the conditions as shown by the plans and specifications did not exist; that as soon as it discovered the depths to which said piers would have to go and that the actual conditions were not as had been represented to it by the contracting parties, it notified the State Highway Department that the contract could not be carried out in accordance with the plans and specifications and had been breached, that it would not proceed with the contract, and that the same was canceled; that to construct the bridge according to the plans and specifications would require such material changes in the plans and specifications and such additional expense that the contract should be declared null and void. The prayers of the second count of the petition were, that the court, exercising its equitable jurisdiction, decree that the alleged contract be rescinded; that petitioner have judgment against the defendants for the amount of 15 per cent. of the value of the work performed and accepted by the county, which was reserved by the county under the terms of the contract, and for the profits which petitioner would have earned if it had completed the work under the terms of the contract.

We have stated at some length the substantial allegations of the second count of the petition, in order that it may be determined whether the case thereby made is one in equity or not. The only conceivable basis for the contention that the second count makes a case in equity is that the plaintiff therein seeks to rescind the contract for the building of this bridge. There is no valid ground for this contention. The petition sets out the contract, alleges that it was breached by the county, and seeks to recover the full fruits which would have arisen from the completion of the contract if it had not been breached by the county. It is well settled that a party to a contract can not in the same action both treat the contract as rescinded because of its breach by the other party, and sue for the fruits of the contract which would be coming to him if he had been permitted to perform his obligations thereunder, and at the same time rely upon the contract as existing. *Timmerman* v. *Stanley*, 123 *Ga.* 850 (51 S. E. 760, 1 L. R. A. (N. S.) 379). The contractor could repudiate the contract because of its breach by the county, and bring suit to have it declared rescinded, and to recover such damages as he was entitled to under the rescission. *Supreme Council* v. *Jordan*, 117 *Ga.* 808 (45 S.

E. 33). Or he might sue for a breach of the contract and recover from the county such damages as he was entitled to on account of the breach of the contract by the county. *Alabama Gold Life Ins. Co.* v. *Garmany,* 74 *Ga.* 51. Besides, the allegations of the second count are not such as would entitle the plaintiff to a rescission of the contract. Where a contractor is induced to enter into a contract for the building of a bridge by the fraud of the county, when the former discovers the fraud he has an election of remedies. One of such remedies is to rescind the contract, and another is to affirm the contract and sue for damages for the fraud. Civil Code, § 4305; *Hunt* v. *Hardwick,* 68 *Ga.* 100; *Wright* v. *Zeigler,* 70 *Ga.* 501; *Bacon* v. *Moody,* 117 *Ga.* 207 (43 S. E. 482); *Tuttle* v. *Stovall,* 134 *Ga.* 325, 328 (67 S. E. 806, 20 Ann. Cas. 168); *Gibson* v. *Alford,* 161 *Ga.* 672 (5) (132 S. E. 442). In view of the fact that the contractor, after the discovery of any fraud perpetrated upon him by the owner, by which he was induced to make the contract, sues upon the contract and seeks to recover damages for its breach, he makes no case for the rescission of the contract in equity, by allegations that he had canceled the contract, and that the contract should be rescinded because representations made by the owner as to existing conditions were untrue, and by a prayer that the court, in the exercise of its equity powers, should decree the contract rescinded. Such suggestions, allegations, and prayer are merely colorable, and do not make a case in equity. *Lewis* v. *Cocks,* 90 U. S. (23 Wall.) 466 (23 L. ed. 70); *Scott* v. *Neely,* 140 U. S. 106 (11 Sup. Ct. 712, 35 L. ed. 358).

But it is insisted by counsel for the county that we must determine whether the second count sets out a cause of action at law or makes a case in equity, upon the character of the relief sought, and which is shown by its prayers. It is true that in *Sleed* v. *Savage,* 115 *Ga.* 97 (41 S. E. 272), this court held that "Whether a petition is based upon an equitable or a legal cause of action depends upon the character of the relief sought, as shown by the prayers, which indicate whether the alleged cause of action is intended by the pleader as founded upon legal or equitable principles;" but this court did not mean to hold in that case that an action at law could be held to be one in equity because one or more of the prayers were for affirmative equitable relief. Where the facts alleged make either a legal or an equitable cause of action,

then the courts will resort to its prayers to determine whether the pleader intended to proceed at law or in equity; but this court never meant to hold that, where the facts alleged make a case at law, the action should be classified as one in equity because one of the prayers was for equitable relief. Looking to the second count as a whole, we think it is fairly clear that the pleader did not intend therein to seek to have the contract rescinded because of fraud, and to have the equitable rights of the contractor fixed under its rescission, which rights would be entirely different from what they would be if the contract was not rescinded; and that the intention of the pleader was to set forth a cause of action upon the contract and for its breach, and for the recovery of damages to which the contractor would be entitled growing out of the breach of the contract. The allegations in this count that the contractor had canceled the contract, and that the contract should be rescinded because of the great variance between the represented and the actual conditions, should be treated as meaning that the contractor had the right to treat the contract as ended and as no longer in force, because of its antecedent breach by the county growing out of the misrepresented existing conditions under which the work could be done; and the prayer that the court, in the exercise of its equitable jurisdiction, should decree the contract rescinded, should be treated as meaning that the court should decide that the contract was at an end and no longer of force because of such breach. So we are of the opinion that the second count of the petition does not make a case in equity; and it being conceded by counsel for the contractor that the first count undertakes to set up an action at law, the Court of Appeals did not err in refusing to transfer the case to this court on the ground that it was without jurisdiction to decide the case.

2. We come now to consider and decide the controlling and troublesome question in this case: Did the Court of Appeals miss the mark in affirming the judgment overruling the demurrers to both counts of the petition? The contractor sues for the full price which the county was to pay it for material actually furnished and work actually performed by it in partially erecting this bridge, and for the profits which it would have realized from the completion of the bridge, on the ground that there was a breach of the contract by the county, which excused the contractor from full per-

formance of its contract, and which entitled it to recover the value of the material so furnished and the work so done towards the erection of said bridge, and the profits which the contractor would have made, had the county not breached its contract. Confessedly the contractor did not erect the bridge as he agreed to do. The failure of the plaintiff to fully perform his contract is generally a complete defense to any action brought for partial performance. Civil Code, § 4318; *Bennett* v. *Burkhalter*, 128 *Ga.* 154 (2) (57 S. E. 231). If performance becomes impossible by act of God, such impossibility excuses performance. Civil Code, § 4319. So if the non-performance is caused by the act or fault of the opposite party, that excuses the other party from performance. Civil Code, § 4321. Where one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation because unforeseen difficulties are encountered. Phœnix Bridge Co. *v.* United States, 211 U. S. 188 (29 Sup. Ct. 81, 53 L. ed. 143); Day *v.* United States, 245 U. S. 159 (38 Sup. Ct. 57, 62 L. ed....); United States *v.* Spearin, 248 U. S. 132 (39 Sup. Ct. 59, 63 L. ed....). In this case the plans and specifications showed that the foundations for the piers would be located at about given elevations above sea-level. The foundation for pier (c) was to be about 36 feet above sea-level. It turned out that the foundation for this pier would have to be located at 8 feet and 7 inches above sea-level. The foundation for pier (d) was to be located at an elevation of about 30 feet above sea-level. It developed that the foundation for this pier would have to be located 14 feet above sea-level. The specifications provide that these elevations for the bottom of the piers "represent the foreseen conditions." Counsel for the contractor contend that the plans showing these approximate elevations of the piers, and the statement of the specifications that the elevations shown upon the plans for the bottom of the piers "represent the foreseen conditions," were a representation as to existing conditions, and, as this representation was untrue, that there was a breach of the implied warranty thus made by the county, for which the contractor can recover damages. If nothing further appeared than the representation upon the plans of these approximate elevations of the bottom of the piers, and the statement in the specifications that these elevations represent the foreseen con-

ditions, the contractor, if it had undertaken to build these piers or this bridge for a lump sum, would be entitled to recover if this representation was untrue. The statement in the specifications, standing alone, that the elevations of the bottom of the piers shown on the plans represented foreseen conditions, amounted to a representation that these foreseen conditions existed, upon which the contractor could rely; and if this representation was untrue, and was known to the county to be untrue, such representation amounted to a deception; and the contractor, upon the discovery of the falsity of the representation, could treat the contract as breached by the county, and recover damages for such breach, although bidders were requested in the specifications to visit and carefully examine the site and the plans and specifications for the proposed work, and satisfy themselves as to the quality, quantity, and nature of the work to be done, and the correctness of the plans and advertisement, where a careful examination of the site and plans and specifications would not disclose the falsity of the representation that the foundations for the piers could be placed at the elevations shown in the plans.

The same principles of right and justice which prevail between individuals should control in the construction and carrying out of contracts between the county and individuals. United States *v.* Utah &c. Stage Co., 199 U. S. 414 (26 Sup. Ct. 69, 50 L. ed. 251). In Jackson *v.* State, 210 App. Div. 115 (205 N. Y. Supp. 658), it was held: "Where State, knowing that the excavating for canal would be in hard compact material, represented in its plans, on which contractor's bid was based, that material was soft, contractor was entitled to damages for fraud, notwithstanding contract provision that State should not be liable for erroneous statements in plans." In Langley *v.* Rouss, 185 N. Y. 201 (77 N. E. 1168, 7 Ann. Cas. 210), it was held that where the amount of work to be performed and materials to be furnished under a contract depended upon conditions that could not be ascertained by inspection, and bidders were not required and given an opportunity to make such investigation as was necessary to satisfy themselves as to the amount of work to be done and materials to be furnished, and the contract, plans, and specifications included representations as to existing conditions, which were inserted for the purpose of enabling contractors to determine what bid to make

for the proposed work and materials, a recovery could be had as for a breach of contract for damages caused, if it should turn out that the representations were erroneous. In Hollerbach *v.* United States, 233 U. S. 165 (34 Sup. Ct. 553, 58 L. ed. 898), it was held: "A positive statement in a contract as to present conditions of the work must be taken as true and binding upon the Government, and loss resulting from a mistaken representation of an essential condition should fall upon it rather than on the contractor, even though there are provisions in other paragraphs of the contract requiring the contractor to make independent investigation of facts." In Christie *v.* United States, 237 U. S. 234 (35 Sup. Ct. 565, 59 L. ed. 933), the Supreme Court of the United States held: '"Where there is a deceptive representation in the specifications as to the material to be excavated which actually misleads the bidder who obtains the contract, and it is admitted by the Government that time did not permit borings to be made by the contractor to verify the representations, the latter is entitled to an allowance for the actual amount expended over what would have been the cost had the boring sheets been accurate, notwithstanding there was no sinister purpose whatever."

If the contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in plans and specifications. Bentley *v.* State, 73 Wis. 416 (41 N. W. 338) ; Filbert *v.* Philadelphia, 181 Pa. 530 (37 Atl. 545) ; MacKnight Flintic Stone Co. *v.* New York, 160 N. Y. 72 (54 N. E. 661) ; Sundstrom *v.* New York, 213 N. Y. 68 (106 N. E. 924) ; United States *v.* Spearin, supra. Where the specifications upon which a dredging contract was based described the materials to be removed as believed by the Government to be mostly mud and fine sand, declined to guarantee the accuracy of the description, required bidders to examine and decide for themselves, referred them to maps exhibiting results of test borings made by the Government, which confirmed the description, declined to guarantee that such borings actually represented the character of the bottom over the entire vicinity in which they were taken, but expressed the Government's belief that the general information thereby given was trustworthy, such representations were deceptive, where test borings gave information to the Government, not imparted to bidders, of materials

more difficult to excavate than those shown by the maps and specifications. A contractor which relied upon such representations of the results of the borings and of the Government's belief based thereon, which reliance was confirmed by the Government's approval of its plant—adapted only to the lighter materials and submitted for inspection as to its adequacy pursuant to the specifications, was entitled to stop work after part performance, and recover the difference between the cost of the excavation done and the amount received under the contract. United States *v.* Atlantic Dredging Co., 253 U. S. 1 (40 Sup. Ct. 423). In Passaic Valley Sewerage Com'rs *v.* Tierney, 1 F. (2d) 304, the Circuit Court of Appeals of the Third Circuit held, that, under a contract for the construction of sewerage works according to plans and specifications prepared by sewerage commissioners' engineer, the commissioners impliedly warranted that methods prescribed by plans and specifications for supporting pipes and for making joints between pipes water-tight were adequate if work was properly done by contractor. Articles in specifications prescribing the character, dimensions, and location of a sewer which a contractor agreed to build, imported a warranty that, if so constructed, the sewer would prove adequate. United States *v.* Spearin, supra. In United Construction Co. *v.* Haverhill, 9 F. (2d) 538, the Circuit Court of Appeals of the Second Circuit held, that "If plans and specifications for bridge were a representation as to character of foundation at depth specified therein, contractor was excused by misrepresentation from performance of its promise to excavate to solid ledge." This responsibility of the owner is not overcome by the usual clauses requiring bidders to visit and inspect the site, to check the plans, and to inform themselves of the requirements of the work. United States *v.* Utah &c. Stage Co., Hollerbach *v.* United States, Christie *v.* United States, United States *v.* Spearin, supra.

This brings us to determine whether the falsity of the statement in the specifications, that the elevations of the bottoms of the piers of the bridge, as shown upon the plans, represented the foreseen conditions, entitles the contractor to recover in this case under either count of the petition. An action sounding in tort can not be maintained against the county, unless expressly authorized by statute. Civil Code, § 384; *Decatur County* v. *Pray-*

*tor, Howton & Wood Contracting Co.,* 163 *Ga.* 929 (137 S. E. 247). The county would not be liable to the contractor for any deceit perpetrated upon it by the engineer of the State Highway Department, caused by his representation that borings had been made to determine whether the foundations of the piers could be located at the elevations shown upon the plans, when such representation was false and known by the engineer to be false. For such deceit the remedy of the contractor would be against the engineer. Where county officials make fraudulent representations to a contractor, he can only have redress for the fraud against the county officials personally. Stewart *v.* State, 201 N. Y. Supp. 334 (121 Misc. 827). The contractor can only recover for the falsity of this representation upon the ground that it amounts to an implied warranty that the foreseen conditions existed as represented. As stated above, if the contractor was to build this bridge for a fixed sum, this representation, standing alone, would amount to an implied warranty by the county that the foreseen conditions existed as represented, and for breach of this warranty the contractor could recover from the county damages resulting from such breach. This statement is only a part of the article from which it was taken. The remainder of this article provides: "In case the actual elevations necessary to obtain a foundation satisfactory to the engineer differ from those shown on the plans, an allowance will be made either for or against the contractor on an equitable unit price to be estimated by the engineer." From this provision as a whole it clearly appears that the county did not intend to warrant that the bottoms of the piers could be built at the elevations above sea-level shown in the plans. This article suggests that the foundations shown on the plans might be unsatisfactory to the engineer, implies that the conditions might be such that the bottoms of the piers could not be placed at the elevations shown in the plans, and makes provision for compensation of the contractor if he had to erect the piers on lower foundations. Instead of raising such implied warranty, the statement contains a contrary implication.

Another article of the specifications cautioned bidders that the estimate of quantities attached thereto would serve, so far as the contract was concerned, only for the purpose of comparing bids, and that the basis of payment would be the actual quantities of

work performed, and if, upon the completion of the project, the actual quantities should show either increase or decrease from the quantities shown in the approximate estimates, that the unit prices mentioned in the proposal would still control. The contractor in its proposal stated that it understood these quantities were approximate only, and were subject to either increase or decrease, and it proposed to perform any increased or decreased quantities of work at the contract prices. Thus it will be seen that the work was to be paid for on the basis of unit prices. Another article of the specifications gave the engineer the right to make reasonable changes in the plans or character of work, when, in his judgment, this might be desirable; but in case changes should serve to increase the cost of the work to the contractor, a corresponding increase or decrease to be agreed upon between the engineer and contractor would be made in the amount paid the contractor. In case of any change in the work the contractor was to furnish all material required and all labor necessary, at actual cost plus ten per cent. to cover the cost of supervision, and the rental of ordinary equipment required to do the work under any change in the plans; and in case of special equipment or machinery being required to perform the extra work economically, the engineer might order the use of such equipment or machinery, and payment for the same by the contractor would be made upon a rental basis to be agreed upon between the engineer and the contractor. The specifications further contained the statement that alternate plans were being considered for the movable span of the bridge; and that the right was reserved to change the plans for piers (c) and (d) to fit the design that might be adopted.

Considering all the provisions of the specifications applicable in this matter, we do not think that the county intended that the representation that the elevations for the bottoms of the piers represented foreseen conditions was a warranty of the representation, upon which the contractor could act in erecting these piers, and that the untruthfulness of the representation would be a breach of the warranty for which the county would be liable to the contractor in damages. The contractor certainly was not led to believe that these piers were to be built on foundations at the elevations above sea-level shown on the plans. In consequence the contractor would not be hurt by the falsity of the representa-

tion. For the additional material and work rendered necessary by erecting the piers at lower elevations above sea-level, it would be paid the unit prices at which it agreed to erect them at the elevations shown on the plans.

But the contractor insists that it was not financially able to erect this bridge on these piers at the reduced elevations, and that it would not have submitted a proposal if it had known that the piers had to be built upon these lower foundations. This contention is not well taken. The specifications provided for such situation, and for increased compensation to the contractor in consequence of the changed situation. In these circumstances the contractor submitted a proposal to build this bridge, and contracted to build it, if the piers could not be built at the elevations shown upon the plans, and the county agreed to pay it for all additional material which would have to be furnished and for all additional labor which would have to be performed, in constructing these piers upon different foundations and at lower levels. Its proposal was not alone to build these piers upon the elevations shown in the plans, in which case it would have been relieved from so doing if the piers could not be so built, but its proposal was to build these piers upon different foundations if the foundations represented upon the plans were unsatisfactory to the engineer. The contractor was as much bound by its proposal and contract to build the piers upon different and lower foundations, if the foundations shown on the plans were unsatisfactory to the engineer, as it was to build these piers on the foundations shown in the plans. If the contractor did not wish to run the risk of having to furnish the additional material and do the additional work necessary to erect them at lower elevations than called for in the plans, because of its financial inability to do so, it should not have submitted this proposal and entered into the contract which required the contractor to erect them on different foundations which might involve additional expenditures for material and labor.

The question whether the petition set forth a cause of action was not involved in the questions certified to this court by the Court of Appeals. *Decatur County* v. *Praytor, Howton & Wood Contracting Co.*, 163 *Ga.* 929 (supra). The first question certified by the Court of Appeals to this court assumed that the difference between the representations in the plans and specifications,

as to the facts and conditions under the bed of the river, and the actual facts and conditions, amounted to a breach of the contract by the county; and that court wished to know if, in these circumstances, the contractor could maintain an action at law against the county for damages for a breach of the contract. Under the rule adopted by this court, we dealt with the question as propounded; and did not undertake to decide whether the petition set forth a valid cause of action or not.

So we are of the opinion that the petition did not set forth a cause of action against the county, and that the judgment of the Court of Appeals should be

*Reversed. All the Justices concur.*