## 41860. STATE HIGHWAY DEPARTMENT v. HEWITT CONTRACTING COMPANY.

ARGUED MARCH 9, 1966—DECIDED APRIL 14, 1966—REHEARING DENIED MAY 18, 1966—

*Arthur K. Bolton, Attorney General, Richard L. Chambers, E. J. Summerour, Assistant Attorneys General,* for appellant.

*Greene, Neely, Buckley & DeRieux, Ferdinand Buckley, John D. Jones, C. Richard McQueen, B. Hugh Burgess,* for appellee.

JORDAN, Judge. ■ This case was transferred to the Supreme Court by this court because of the allegations and prayers of count 5 of the petition seeking rescission of the contract on the ground of mutual mistake so that recovery could be had, independently of the contract, for the reasonable value of all the work performed and of all the materials furnished in the construction of the highway project on the basis of quantum meruit. In *State Hwy. Dept. v. Hewitt Contracting Co.,* 221 Ga. 621 (146 SE2d 632), the Supreme Court held that this case did not come within the equity jurisdiction of that court and remanded the case to this court. This ruling was based upon two grounds: (1) that the plaintiff was not entitled to the equitable relief of rescission of contract since it was not shown that the plaintiff had acted promptly to seek such relief upon discovery of the alleged mutual mistake but on the contrary had continued for a year or two to perform the contract until completion; and (2) that rescission of the contract was not necessary "in order

for the plaintiff to recover, if entitled to recover, the value of the additional work allegedly caused by the mistake found in the specifications of the project," since the contract itself anticipated that there might be errors and omissions in the specifications which would cause extra or additional work not set out in the specifications and made ample provision for compensation to be paid the contractor for such additional work. As pointed out in the opinion at page 622: "The contract was attached as an exhibit to count 5. It plainly appears from the terms of the contract that, while the specifications which constituted a part of the contract were relied upon as the basis of the same, there might be errors and omissions in the specifications which would cause extra or additional operations not set out in the specifications. The contract made ample provision for compensation to be paid the contractor for such additional work. It furnished two formulas to be used in determining the value of the work: one that the parties agree upon the price to be paid; the other that they submit the matter to arbitration. From count 5 or elsewhere in the petition it did not appear that the mistakes referred to in the count were not of the nature contemplated by the contract or that the extra work caused by the alleged mistakes was not within the provisions of the contract, stipulating compensation for such work would be paid the contractor."

The Supreme Court in denying the plaintiff's right to equitable relief held in effect that the plaintiff contractor must recover, if at all, under the contract executed by the parties; and in so ruling reached the same result arrived at by that court in *Decatur County v. Praytor, Howton &c. Co.*, 165 Ga. 742 (142 SE 73). In that case, the plaintiff contractor brought suit against the county with which it had contracted to build a bridge to recover damages for the county's alleged breach of an implied warranty that the plans and specifications for the construction of the bridge were correct. The petition alleged that there were errors in these plans and specifications of which the county had knowledge when the contract was executed, that the plaintiff did not have knowledge of the same at the time of the execution of the contract and had relied upon their correctness in bidding, and that upon discovering such errors, the plaintiff immediately re-

nounced the contract and brought suit to recover the reasonable value of the work performed and materials furnished up to the time of discovering the errors in the plans and specifications plus lost profits resulting from failure to complete the contract because of the county's breach of same.

The court in holding that there was no implied warranty of the correctness of the plans and specifications and that the contractor had no right to repudiate the contract because of the errors therein but was under a duty to do whatever work was necessary to complete the project, pointed out that the subject contract clearly anticipated that there might be errors in the plans and specifications and that additional work might be caused by such errors and by changes in the plans and specifications and provided for the contractor to be compensated for the actual work done upon completion of the project which included compensation for any additional work required because of errors or changes in the plans and specifications. After considering the various provisions of the contract anticipating errors and changes in the plans and specifications, the court stated as follows at page 763 of the opinion: "[W]e do not think that the county intended that the representation that the elevations for the bottoms of the piers represented foreseen conditions was a warranty of the representation, upon which the contractor could act in erecting these piers, and that the untruthfulness of the representation would be a breach of the warranty for which the county would be liable to the contractor in damages. The contractor certainly was not led to believe that these piers were to be built on foundations at the elevations above sea level shown on the plans. In consequence the contractor would not be hurt by the falsity of the representation. For the additional material and work rendered necessary by erecting the piers at lower elevations above sea level, it would be paid the unit prices at which it agreed to erect them at the elevations shown on the plans.

"But the contractor insists that it was not financially able to erect this bridge on these piers at the reduced elevations, and that it would not have submitted a proposal if it had known that the piers had to be built upon these lower foundations. This contention is not well taken. The specifications provided for

such situation, and for increased compensation to the contractor in consequence of the changed situation. In these circumstances the contractor submitted a proposal to build this bridge, and contracted to build it, if the piers could not be built at the elevations shown upon the plans, and the county agreed to pay it for all additional material which would have to be furnished and for all additional labor which would have to be performed, in constructing these piers upon different foundations and at lower levels. Its proposal was not alone to build these piers upon the elevations shown in the plans, in which case it would have been relieved from so doing if the piers could not be so built, but its proposal was to build these piers upon different foundations if the foundations represented upon the plans were unsatisfactory to the engineer. The contractor was as much bound by its proposal and contract to build the piers upon different and lower foundations, if the foundations shown on the plans were unsatisfactory to the engineer, as it was to build these piers on the foundations shown in the plans. If the contractor did not wish to run the risk of having to furnish the additional material and do the additional work necessary to erect them at lower elevations than called for in the plans, because of its financial inability to do so, it should not have submitted this proposal and entered into the contract which required the contractor to erect them on different foundations which might involve additional expenditures for material and labor."

The contract under review in the present case likewise anticipated errors and changes in the plans and specifications and provided compensation for additional and extra work required thereby; and it is our opinion that here as in the *Decatur County* case, supra, there was no warranty, express or implied, that the plans and specifications were correct; and that the plaintiff contractor must recover, if at all, under the contract and subject to the terms and requirements thereof, for the additional work performed by it, and may not renounce the contract for fraud or mistake and recover on the basis of quantum meruit for the reasonable value of all work performed and materials furnished. Counts 2, 3, 4 and 5 of the petition did not, therefore, state a cause of action for the relief sought therein, and the trial court

erred in overruling the general demurrers to these counts of the petition.

■ The plaintiff in count 1 of the petition is seeking to recover (a) compensation allegedly due it under the contract for the various items of additional work necessitated by errors and changes in the Highway Department's plans and specifications and certain other extra expenses allegedly incurred as the result of other errors, mistakes and omissions of contractually imposed duties and obligations of the Highway Department and its agents; and (b) the balance due under the contract which was withheld by the Highway Department as liquidated damages because of the delay in completion of the project beyond the time allowed in the contract.

■ Section 1 of the State Standard Specifications, in accordance with which the contractor agreed to perform the work under the contract, defined "extra work," as "Work or materials considered necessary for the proper completion of the improvement, unforeseen when the Plans and Specifications were prepared, for which no unit price is provided in the Proposal." Additional work caused by errors in the plans and specifications comes within the contract provisions for extra work and compensation therefor, provided that the contractor in the exercise of reasonable diligence in making the required pre-bid examination of the plans and specifications and inspection of the proposed work site should not have contemplated and computed such work in making its bid, and provided further that the contractor has complied with the provisions of the contract concerning compensation for extra work or can show a waiver of these provisions by the Highway Department. *State Hwy. Dept. v. Wright Contracting Co.*, 107 Ga. App. 758, 762 (131 SE2d 808) ; *Decatur County v. Praytor, Howton &c. Co.*, supra, p. 759.

As pointed out by the Supreme Court when this case was before that body, it does not appear from count 1 of the petition, "that the mistakes referred to in the count were not of the nature contemplated by the contract or that the extra work caused by the alleged mistakes was not within the provisions of the contract, stipulating compensation for such work would be paid the contractor," and since it cannot be said as a matter of

law under the allegations of the petition that the contractor was barred by its failure to exercise reasonable diligence in its pre-bid inspection and computations, we need only determine "whether there was either such a compliance by the plaintiff with the provisions of the contract concerning compensation for extra work, or a waiver of these provisions by the defendant." *State Hwy. Dept. v. Wright Contracting Co.,* supra, at p. 762.

Section 4.04 of the Standard Specifications provides that "Extra Work as defined in Section 1 herein, shall be done by the contractor in accordance with the specifications and as directed, provided that, before any Extra Work is begun, a Supplemental Agreement or an Extension Agreement shall be signed by both contracting parties or an Extra Work Order shall be issued, directing the contractor to do the work by Force Account." Section 9.05 of the Standard Specifications provides that "Extra Work, as defined in Section 1, when ordered and accepted, will be authorized by an Extra Work Order or by a Supplemental Agreement. In all cases such agreements shall be made before Extra Work is started and shall be paid for in accordance with the following. . ." Section 5.15 of the Standard Specifications, entitled Claims for Adjustments and Disputes, provides as follows: "In any case where the Contractor believes that extra compensation is due him for work or material not clearly covered in the contract or not ordered by the Engineer as Extra Work, *the Contractor shall notify the Engineer in writing of his intention to claim such extra compensation before he begins the work on which he bases the claim. If such notification is not given,* and the Engineer is not afforded proper facilities by the Contractor for keeping strict account of actual cost as required by Force Account, *then the Contractor hereby agrees to waive the claim for such extra compensation."* (Emphasis supplied.)

Provisions of this nature in highway construction contracts have been held to be legal and binding on the parties in the absence of special circumstances such as those in the *Wright* case, supra, which authorize a finding that the Highway Department has waived or is estopped to rely on same. *State Hwy. Dept. v. MacDougald Constr. Co.,* 189 Ga. 490 (6 SE2d 570). Clearly, they are binding upon the plaintiff contractor in this case, and

since the petition does not allege that the contractor sought in any way to comply with the provisions requiring the giving of notice of claim for extra compensation and the execution of supplemental agreements before commencing such work, and since no circumstances which would excuse compliance are alleged, we must assume that no such notice was given and that such circumstances did not exist. It necessarily follows therefore that the contractor is prohibited from recovering compensation for such additional work by the provisions of Section 5.15 of the Standard Specifications.

The only reference to special circumstances in this case is found in paragraph 13A of the amended petition in which it is alleged that "within approximately four or five months after the letting of the contract which is the subject of this action, defendant's agents (who are unknown to the plaintiff but well known to defendant) gained actual knowledge of the errors and omissions in the defendant's plans, as hereinafter set forth, but defendant's agents deliberately concealed said information of said errors and omissions from plaintiff. Defendant had actual knowledge of all of the extra work which was made necessary by said errors and omissions and defendant had, therefore, opportunity to measure said extra work. The aforesaid errors and omissions in said plans and the extra work which defendant required of plaintiff in order to correct for said errors and omissions constituted constructive changes in said plans."

Assuming for the sake of argument only that the allegations of paragraph 13A are sufficient to show actual knowledge on the part of the Highway Department of the errors and omissions in its plans and specifications and that it knew that extra work would be thereby required, the petition does not allege that the Highway Department with such knowledge did any affirmative act which would lead the plaintiff to believe that it was not necessary for it to give notice of a claim for extra compensation before doing the work; and mere silence when there is no duty to speak, cannot constitute a waiver or estoppel. The duty was on the plaintiff contractor under the contract to give the initial notice of a claim for compensation before embarking on what it considered extra work and was not on the defendant Highway

Department to inform the contractor that it was about to do extra work for which it must give notice and execute a supplemental agreement. The Highway Department clearly had the right under the circumstances of this case to rely on the provisions of the contract and to presume that the contractor would do likewise.

The *Wright* case, supra, which is relied upon by the plaintiff as the basis for its contention that the Highway Department has waived these provisions, is materially different from this case. In *Wright*, the contractor gave the Highway Department written notice that it would claim extra compensation for performing additional work necessitated by certain roadbed conditions not foreseen by the parties and contemplated by the plans and specifications; and it was held that since notice was given and since the Highway Department with knowledge of the plaintiff's claim directed the performance of the work without taking the action required by the contract to execute a supplemental written agreement, the Highway Department waived such requirement and could not defeat the contractor's claim on the ground that a written agreement was not executed by the parties before the work was done. The contractor in this case did not give notice of its intention to claim extra compensation.

The case of *State Hwy. Dept. v. W. L. Cobb Constr. Co.,* 111 Ga. App. 822 (5) (143 SE2d 500), also relied upon by the plaintiff, is distinguishable from this case. It was held in division 5 of the *Cobb* case, supra, that it was not error to instruct the jury that the fact that the contract called for supplemental agreements to be in writing would not be a defense as against a defendant who authorized work thereunder without requiring such written agreement. The court relied on the *Wright* case, supra, as authority for this ruling, and presumably, it used the word "authorized" in the sense of "directed," as was the case in *Wright*. It is not alleged here that the Highway Department directed or affirmatively authorized the plaintiff contractor to do any additional work resulting from errors in the plans and specifications for extra work compensation.

Under the circumstances of this case which clearly show noncompliance on the part of the plaintiff contractor with the con-

ditions precedent of the contract concerning compensation for extra work, the contractor is not entitled to recover compensation for those items of additional work set forth in paragraphs 18, 19, 20, 21, 22, 23, 24, 26, 27 and 43 of count 1 of the petition, all of which relate to claims for extra compensation of which notice should have been given before the work was instituted.

In paragraph 25 of count 1 of the petition the plaintiff seeks to recover the sum of $195,750 as damages resulting from the refusal of the resident engineer in charge of this project for the Highway Department to allow the plaintiff to crush 261,000 tons of rock removed from excavations on the job for use as base and paving material. According to the allegations of this paragraph, the resident engineer informed the plaintiff that this stone was not of proper quality when in fact it was suitable for the use intended. It was not alleged, however, that the decision of the resident engineer was based on fraud or such gross mistake as would necessarily imply bad faith or a failure to exercise an honest judgment; and in the absence of allegations showing same, the plaintiff may not recover for the refusal of the engineer to allow the use of stone excavated on the job even if this judgment was erroneous, since the Standard Specifications in Section 5.01 provided that the decision of the resident engineer in such matters would be final. *State Hwy. Dept. v. MacDougald Constr. Co.*, 189 Ga. 490, supra; *State Hwy. Dept. v. W. L. Cobb Constr. Co.*, 111 Ga. App. 822, supra.

Section 5.06 of the Standard Specifications, entitled Construction Stakes, provides in subsection (a) that "The Engineer will furnish and set construction stakes establishing lines, grades, slopes and elevations for roadway work, and will furnish the contractor with all other necessary information related to lines, slopes and grades . . ." and in subsection (b) that "Before commencing work, the Contractor must satisfy himself as to the correctness and meaning of all stakes, marks and measurements. No claim will be entertained because of alleged inaccuracies unless the Contractor notifies the Engineer about them in time for the Engineer to check the measurements before the work is begun." Paragraphs 28, 30 and 31 seek compensation for extra expenses incurred as the result of errors in the setting of grade

elevation stakes, and since compliance with the provisions of Section 5.06 is not shown nor is any legal reason for noncompliance alleged, there can be no recovery for these items of damages.

The plaintiff in paragraphs 29, 35 and 36 alleges that it is entitled to extra compensation in stated amounts for extra work it was required or directed to do by the Highway Department because of changes in the plans and specifications. Since this work was affirmatively authorized by the department because of changes in the plans and specifications, the rulings in division 5 of the *Cobb* case, supra, and in division 1 of the *Wright* case, supra, are applicable; and the plaintiff contractor is not prevented from recovering for such expenses because of the failure to give notice of its intention to claim extra compensation and to execute a supplemental agreement. A cause of action is stated for the items of damages set forth in these paragraphs of count 1. The plaintiff contractor in paragraphs 37 and 38 of count 1 also seeks to recover for certain items of work allegedly required because of changes in the plans and specifications. The petition discloses, however, that as to this work, an express supplemental agreement was executed by the parties, and in the absence of allegations to the contrary it must be presumed that compensation for all work done pursuant to this supplemental agreement was provided for in the agreement itself. Paragraphs 37 and 38 are therefore subject to the Highway Department's general demurrers.

A cause of action is also stated for the items of recovery set forth in paragraphs 32, 33, 39 and 40 which according to the allegations of the petition represented work done under the plans and specifications and at the direction of the Highway Department but which were either omitted from the final estimate prepared by the Highway Department or were erroneously computed therein. Recovery is not authorized for the item included in paragraph 41, however, since the discrepancy between that sum included in the final estimate of the Highway Department for a certain item of work and the sum contended for by the plaintiff is not alleged to result from a mere error in calculation but results from a dispute as to classification of the work which

would come within the purview of the contractual provisions providing that the decision of the Resident Engineer is conclusive on the parties, no fraud or gross mistake being alleged.

█ We come now to the contention of the plaintiff contractor that it is entitled to recover the sum of $170,400 due under the contract which the Highway Department has withheld as liquidated damages for alleged delays in the completion of construction. The plaintiff contends that its delay in construction was primarily caused by the additional work necessitated by the errors in the plans and specifications of the Highway Department. Delay was also caused according to the allegations of paragraph 44 of count 1 of the petition by the failure of the Highway Department to comply with its contractual duty to require the DeKalb County Water Works System to remove a 30-inch water main which crossed the right of way and in paragraphs 45 and 46 it is alleged that the Highway Department in its final estimate failed to give the plaintiff credit for extensions of time authorized in supplemental agreements executed by the parties.

Section 8.09 of the Standard Specifications, entitled "Failure Or Delay In Completing Work On Time," provided as follows: "Time is an essential element of the Contract, and as delay in the prosecution of The Work will inconvenience the public, obstruct traffic, and interfere with business, it is important that The Work be pressed vigorously to completion. Should the Contractor, or, in case of default, the Surety fail to complete The Work within the time stipulated in the Contract, or within such extra time as may be allowed, a deduction of the amount incurred by the Department in engineering costs will be made for each calendar day that such Contract remains incomplete after the expiration of the number of Working Days allowed for completion. The amount of engineering costs is hereby agreed upon as liquidated damages for the loss to the Department due to obstruction of traffic, interference with business, and increased cost of engineering, supervision, maintenance of detours around or over The Work and inspection, after the expiration of the working days for completion, specified in the Contract, and will be deducted from any money due the Contractor under this Con-

tract. The Contractor and his Surety shall be liable for any liquidated damages in excess of the amount due the Contractor." Liquidated damages were fixed at $300 per calendar day under the contract.

Section 8.08, entitled "Extension Of Time," provided: "If the Contractor finds that he cannot complete all The Work within the Contract time fixed in the original Notice to Contractors and the Proposal, he shall make written request to the Department for an extension of time, before the Contract time has expired. He shall set forth fully the reasons for his request, enumerating the Work Orders, Extra Work Orders and Supplemental Agreements which he considers as having a bearing on the extension of time and shall also set forth a revised detail progress schedule, providing that the remaining work will be completed on or before the amended Contract time requested. If the Department finds that the work was delayed on account of unusual conditions beyond the control of the Contractor, or that the quantity of work done or to be done is sufficiently in excess of the original Contract quantities to warrant additional time, the Department will, with or without notice to the Surety, grant an extension of Contract time as appears to the Department to be reasonable and proper. This extension of Contract time will thereafter be as binding on the Contractor and Surety as if it had appeared in the original Contract.

"a. Extensions Due to Additional Work: If the final estimate exceeds the Contract bid price, an extension in Contract time will be granted by the Department. Such extension of Contract time will be in direct proportion to the increase in the money value of the Contract as finally completed. All Work Orders, Extra Work Orders and Supplementary Agreements automatically become a part of the Contract, and will be considered as such."

As stated in Division 2 (a) of this opinion, the plaintiff contractor cannot recover for additional work done because of errors in the plans and specifications since the petition did not show compliance with the conditions precedent in the contract regarding compensation for extra work. The petition likewise did not show that the plaintiff complied with Section 8.08 of the

Standard Specifications by making written request for extra time because of such additional work and the provisions for automatic extensions of time contained in subsection (a) of Section 8.08 are not applicable here because the plaintiff has not shown an increase in the money value of the contract. Under these circumstances, it is our opinion that the Highway Department was entitled to liquidated damages for any delay in construction caused by additional work for which no extension of time was sought.

The plaintiff in paragraph 44 of count 1 of the petition alleged as follows: "In entering into said contract of August 8, 1958 with plaintiff, defendant warranted that it owned or controlled the necessary right of way to permit construction of said project in accordance with the plans and specifications incorporated in said contract. However, defendant failed to take the necessary legal steps to require DeKalb County to remove a certain 30-inch water main which crossed the right of way of said project at approximately Station 20.00. On September 5, 1958, plaintiff addressed a written request to W. H. Weaver, Manager, DeKalb County Water Works System, that the aforesaid 30-inch water main be removed in order that plaintiff could perform the work required by its contract with defendant. Notwithstanding repeated requests of plaintiff to DeKalb County Water Works System and to defendant that said 30-inch water main be removed from said project in order that plaintiff could perform its work in accordance with its contract, said water main was not removed from said project until September 28, 1959. By reason of the failure and refusal of defendant, for more than 365 calendar days, to require or provide for the removal of said water main from said right of way by DeKalb County Water Works System, plaintiff's entire planning continuity and performance of the work on said project was disrupted, resulting in a loss of not less than 90 working days to plaintiff." While the plaintiff alleged in this paragraph that it gave notice to the DeKalb County Water Works System on September 5, 1958, to remove a water main from the right of way but that such was not accomplished until September 28, 1959, in spite of repeated requests to the water works system and to the defendant, and while the plaintiff

charges that this delay was caused by the failure and refusal of the Highway Department to require or provide for the removal of this water main from the right of way by the DeKalb County Water Works System, it is not alleged that the plaintiff contractor ever gave notice to the Highway Department that construction of the project was being delayed by the delay in removal of the water main or that it requested additional time for completion of the project because of any such delay in construction in accordance with the provisions of Section 8.08.

In our opinion, the failure of the contractor to give such notice and request precludes it from now contending that the alleged delay in removal of the water main occasioned a justifiable delay in the completion of the project so as to estop the Highway Department from claiming liquidated damages as expressly provided in the contract. While the Highway Department under its contract with the plaintiff did agree to provide the necessary right of way for construction of the project, its plans and specifications showed that there were certain utility lines across the right of way which would have to be removed and relocated by the various utilities and the duty of coordinating the activities of the utilities in removing and relocating same was placed upon the plaintiff under the contract. The plaintiff was thus charged with knowledge that construction might be interrupted because of relocation of utility lines and the duty was on the plaintiff under Section 8.08 to request an extension of time necessitated by any justifiable delay.

The allegations of paragraphs 45 and 46 of count 1 of the petition do state a cause of action for a recovery in part of the funds withheld by the Highway Department as liquidated damages since it is alleged therein that the plaintiff was not given credit in the final estimate for certain extensions of time granted and authorized under supplemental agreements. Under the allegations of paragraph 45 an extension was expressly granted and under the facts alleged in paragraph 46 an extension of time was authorized by necessary implication since the supplemental agreement referred to in this paragraph was executed after the expiration of the time allotted in the original agreement.

■ Since count 1 of the petition does state a cause of action

for some of the items of recovery sought therein as set forth in paragraphs 29, 32, 33, 35, 36, 39, 40, 45 and 46 and for the sum which under the allegations of the petition the defendant Highway Department admits owing the plaintiff, it necessarily follows that the trial court did not err in overruling the general demurrer to this count of the petition notwithstanding the fact that the petition and attached exhibits disclosed as a matter of law that the plaintiff was not entitled to recover the substantial portion of the damages sought. With regard to the defendant's special demurrers, it is our opinion that as to those items of recovery on which the plaintiff is entitled to go to trial, the defendant has sufficient information to prepare its defense, and it is unnecessary to consider the special demurrers.

*Judgment affirmed in part; reversed in part. Bell, P. J., and Eberhardt, J., concur.*