## 58496. WILLIAMS v. KERNS.

CARLEY, Judge.
Appellant entered into a contract with a general contractor for the renovation of his residence. Subsequently, with appellant's consent, the general contractor assigned his contract to appellee. Before the work under the contract was finished, appellant dismissed appellee from the job. Appellee then brought

suit against appellant, alleging breach of contract, malicious interference with contractual relations, and conversion, and seeking recovery under the theory of quantum meruit. Appellee also made a claim for attorney fees. In this appeal from a judgment based on a jury verdict for appellee, appellant contends that the trial court erred in its charge to the jury on the measure of damages to be applied to the breach of contract claim and in denying appellant's motions for directed verdict, new trial and judgment notwithstanding the verdict. Appellant's argument regarding the denial of his motions is based on a claim that there was no evidence to which the jury could apply a measure of damages with any degree of certainty.

1. In recent years, there has been some apparent confusion regarding the measure of damages to be applied when an owner has breached a construction contract. The word "apparent" is used because careful analysis reveals that the confusion is illusory: The basic measure of damages in this context has remained the same for more than 100 years.

In 1871, the Supreme Court, in *Wallace v. Tumlin & Stegall,* 42 Ga. 462, 471, held that "the measure of the damages for such breach will be computed by ascertaining the profits of the enterprise, after deducting the legitimate cost of its execution."

This court, some 38 years later, explained the method to be used in ascertaining the "profits of the enterprise": "Where one employs another to furnish the labor and material and to do the work necessary to the improvement of real estate, but renounces the contract prior to the time when the contractor has incurred any expense toward the performance of it, the recovery for the breach of the contract is limited to the difference between the contract price and what it would have cost the contractor in labor and materials to have performed it. But if the contract is not broken until after the contractor has gone to expense toward its performance, the net loss incurred by him on account of the amount so expended should be added to the difference between the contract price and what it would have cost him to perform the contract." *Campbell & Co. v. Mion Bros.,* 6 Ga. App. 134

(3) (64 SE 571) (1909). It may be seen that the net result of these calculations is that the contractor is awarded the benefits of his bargain, the profit he would have realized had he been permitted to perform the contract completely.

The measure of damages expressed in *Campbell & Co.* has been applied since it was announced, with only minor differences in wording and adjustments to the particular circumstances of cases. However, one of those minor changes of wording, and what we believe to have been a misinterpretation of that change, resulted in confusion and the eventual overruling of three decisions of this court.

In *Herrman v. Conway,* 83 Ga. App. 888, 891 (2) (65 SE2d 41) (1951), this court approved a statement of the measure of damages which, with the figures removed, read as follows: ". . . the difference between the contract price . . . and the *cost to complete the work* under the contract . . . plus the sum . . . expended for material and labor up to the time of the alleged breach." (Emphasis supplied.) *Robertson v. Gore,* 115 Ga. App. 537, 538 (3) (154 SE2d 748) (1967), adopted the language used in *Herrman:* "The measure of damages for a contract not completed because of the fault of the opposite party is the difference between the contract price and the cost to complete the work plus sums expended by the contractor up to the time of the alleged breach." That statement was quoted in *Redman Development Corp. v. West,* 127 Ga. App. 265, 266 (193 SE2d 213) (1972). It is from that point that the apparent confusion began. It is seen that, on their faces, these three decisions merely state the measure of damages as it had always been — the contractor's "profit" (contract price less the cost to the contractor of full performance under the contract) plus his "net loss" (sums expended up to the time of the alleged breach). The only difference between these three cases and *Campbell* being that in the former, it was stated that "profit" is calculated by subtracting "the *cost to complete the work* under the contract" from the contract price and in the latter it was held that the *"cost to perform the contract"* must be subtracted from the contract price to obtain the "profit" figure.

However, in the contracts article of Mercer Law Review's annual survey of Georgia law of 1974, *Redman, Robertson* and *Herrman* were criticized as stating an erroneous measure of damages:

"It is rather unusual that a case stating a basic rule of damages needs description in a survey article. In *Redman Development Corp. v. West,* a construction contract was breached by the owner of the real estate, who ordered the contractor off the job. A judgment in favor of the contractor was reversed because the amount did not appear to be justified by the figures available in the record. The case is remarkable for a statement of the appropriate measure of damages in such a case. The court of appeals' decision quoted:

" 'The measure of damages for a contract not completed because of the fault of the opposite party is the difference between the contract price and the cost to complete the work *plus sums expended by the contractor up to the time of the alleged breach.'*

"The flagrant error of the italicized portion of this 'rule,' if not self-evident, can best be seen in the case of its origin. In *Herrman v. Conway,* when a construction contract was wrongfully terminated by the owner, the court accepted as a proper measure of damages the following:

" '[T]he difference between the contract price of $9,280.59 and the cost to complete the work under the contract of $6,527.79, which cost he itemized, plus the sum of $421.02 expended for material and labor up to the time of the alleged breach, which final figure is $3,173.82 . . .'

"Of course, reversing the figures, if plaintiff had already expended the $6,527.79, and $421.02 was the cost to complete, this measure of damages would give a patently absurd judgment of $15,387.36. [Calculated as follows: Contract price of $9,280.59 less cost to 'complete the work' of $421.02, equaling $8,859.57, plus sums expended by the contractor of $6,527.79, equaling $15,387.36.]

"The correct rule of damages in this situation is that the contractor should receive the unpaid contract price less what he saves as a result of the breach — the cost of completing the contract. It is occasionally stated that the

contractor is entitled to the profit he would have made on the contract, plus the actual expenditures to date of breach. It can be seen that this is simply another way of coming to the same result. The startling misstatement of law found in the *Redman* case, the *Herrman,* case, and the *Robertson* case appears to originate in a misinterpretation of the case of *Campbell & Co. v. Mion Bros.;* however, in that case a correct result was reached." 25 Mercer L. Rev. 97, 108 (1974).

This interpretation of *Herrman, Robertson* and *Redman* in the law review article (which we believe to have been mistaken), was incorporated in this court's decision in *Crankshaw v. Stanley Homes, Inc.,* 131 Ga. App. 840 (1) (207 SE2d 241) (1974). There it was held that the measure used in *Herrman* was a misinterpretation of the rule stated in *Campbell & Co.,* supra, and that the correct rule is that ". . . where the contract is wrongfully breached by the owner the contractor is entitled to recover damages measured by his actual expenditure to the date of the breach, less the value of the materials he has left on hand, plus the profit he would have realized in the event of complete performance, but in no event to exceed the contract price. If progress payments have been made by the owner, he is entitled to credit therefor." *Crankshaw v. Stanley Homes, Inc.,* supra at 842. This court went on in that decision to expressly overrule the measure stated in *Herrman* and applied in *Robertson* and *Redman,* insofar as it conflicted with the measure set out above.

Careful analysis of the whole opinion in *Herrman,* however, reveals that there was no conflict between the measure stated in that case and the measure stated in *Crankshaw.* The confusion derives from the ambiguous reference in *Herrman* to $6,527.79 as the "cost to complete the work" in calculating the profit component of the measure of damages and the mistaken interpretation given to that phrase and figure both by the article in 25 Mercer Law Review and this court in *Crankshaw.* It is clear from the example in the third paragraph of the law review's discussion of the issue (quoted above) that the author interpreted the $6,527.79 "cost to complete the work" figure in *Herrman* in the sense of "cost to finish what was begun." Thus the author of the article assumed

the $6,527.79 figure was intended by *Herrman* to represent the amount that the contractor would have to expend to complete the contract *after* the owner's breach. Adopting that meaning could, as the author asserted, produce "patently absurd" results as represented by the example given in the article. The figure obtained by subtracting "cost to complete the work," as thus interpreted, from the contract price in no way approximates the profit component of the measure of damages as stated in *Campbell & Co.,* the difference between the contract price and the cost to the contractor to perform the contract. If, however, the $6,527.79 "cost to complete the work" figure in *Herrman* represents the cost of the contractor to "perform completely," (i.e., the cost to the contractor to perform the contract ab initio as if the breach had occurred prior to any actual performance), the measure of damages adopted in *Herrman* is correct and does not conflict with the rule pronounced by *Crankshaw*. Such an interpretation is consistent with the facts given in *Herrman*. In fact, for the correct result to have been reached in *Herrman* (as is apparently conceded in the decision in *Crankshaw* (131 Ga. App. at 842)), the $6,527.79 "cost to complete the work" figure must have been intended by the author of *Herrman* to represent the total cost to the contractor to completely perform the contract. To see that this is so, it is only necessary to apply the two interpretations of the $6,527.79 "cost to complete the work" figure from *Herrman* to the measure of damages stated in *Campbell*. Since *Crankshaw* concedes that *Campbell & Co.* states the correct measure and apparently concedes that the result reached in *Herrman* is correct, it is only necessary to apply both interpretations of the $6,527.79 "cost to complete the work" figure to the measure stated in *Campbell* to discover which interpretation results in the "correct" figure of $3,173.82 in damages.

If the $6,527.79 "cost to complete the work" figure, as used in *Herrman,* means the "cost to finish what was begun," i.e., the cost of performing the contract after the breach (as the author of the law review article assumed), then the cost of the contractor's performance under the contract in *Herrman,* from beginning to the end of the

project, as if there had been no breach, would have been $6,949.58 ($6,527.79 to "complete" performance plus $421.02, cost to date of breach). Applying this figure to the measure of damages stated in *Campbell & Co.* results in the following:

| | |
|---|---|
| $2,331.78 | *Profit* ($9,280.59 contract price minus $6,948.81 cost to contractor to perform the contract) |
| + 421.02 | *Net loss* (actual expenditures to date of breach) |
| $2,752.80 | Damages |

If, however, the $6,527.79 "cost to complete the work" figure as used in *Herrman* is merely a restatement of the same figure represented by *Campbell & Co.'s* "cost to perform the contract" (i.e., the cost to the contractor in labor and material to perform the contract without giving consideration to the contractor's prior performance), then the figures in *Herrman,* applied to the measure of damages stated in *Campbell & Co.,* yields the following:

| | |
|---|---|
| $2,752.80 | *Profit* ($9,280.59 contract price minus $6,527.79 cost to perform the contract) |
| + 421.02 | *Net loss* (actual expenditures to date of breach) |
| $3,173.82 | Damages |

Thus, the $6,527.79 "cost to complete the work" figure in *Herrman* must represent the "cost to perform the contract" as used in *Campbell & Co.* since only under that interpretation is the resulting recovery of damages in *Herrman* "correct." Furthermore, since *Crankshaw* purports to be a restatement of the measure of damages stated in *Campbell & Co.,* it follows that if the $6,527.79 "cost to complete the work" figure in *Herrman* means the same as "cost to perform the contract" in *Campbell & Co.,* then applying that interpretation and the resulting figures to the measure of damages stated in *Crankshaw* should yield the "correct" result. Indeed, this is true:

| $421.02 | Actual expenditure to date of breach |
| + 2,752.80 | *Profit* ($9,280.59 contract price minus $6,527.79 cost to perform the contract) |
| $3,173.82 | Damages |

From this analysis it is clear that the $6,527.79 "cost to complete the work" figure as used in *Herrman* to calculate the profit component of the measure of damages must represent the same as the "cost to perform the contract" as used in *Campbell & Co.*, i.e., cost to perform the contract completely without giving consideration to the effect of partial performance in calculating the "profit" component. For a similar analysis, see Chief Judge (then Judge) Deen's dissent to the majority opinion in *Crankshaw*, 131 Ga. App. at 845.

Thus it may be seen that the confusion as to the correct measure of damages amounts only to a misinterpretation of an ambiguous phrase — "the cost to complete the work under the contract of $6,527.79" — used in *Herrman*. The rule, in its various formulations, is unchanged: A contractor injured by the owner's breach is entitled to his profit. All the other language, such as "cost to complete the work" or "cost to perform the contract," used in stating the measure merely describes the calculations necessary to reach that figure.

Having demonstrated that the various decisions of this court concerning the measure of damages here involved are in harmony, we find it appropriate for the resolution of this case and for the guidance of bench and bar to state the measure in a manner applicable to all cases where the owner breaches a fixed-price construction contract:

The basic component of damages recoverable by a contractor when a construction contract is wrongfully breached by the owner is the net profit to which the contractor would have been entitled had full performance of the contract been permitted. That figure is reached by subtracting from the contract price the amount which full performance would have cost the contractor. If performance by either party had begun prior to the

breach, adjustments must be made to ensure that the contractor receives the full amount of the profit, but no more. First, there must be added to the profit figure the amount of the contractor's net loss up to the point of the breach. That figure is reached by subtracting from the expenses incurred by reason of the contractor's performance the salvage or resale value of the material left on hand. The sum of those figures (the profit which would have been realized from full performance plus net loss incurred by performance to the date of breach) may in no event exceed the contract price. Second, there must be deducted from the recovery those amounts received by the contractor from the owner as prepayment or progress payment.

Although it is apparent from the foregoing analysis that it was not necessary that *Crankshaw* overrule *Herrman, Robertson* and *Redman,* we do not find it necessary to overrule any portion of *Crankshaw* or to reinstate the cases overruled therein for the following reasons: The statement of the measure in this opinion does not conflict with that of *Crankshaw;* this opinion contains the basic formulation while *Crankshaw* includes refinements concerning the situation where full performance would result in a net loss; and, while clarification of *Herrman,* et al., would have been sufficient in *Crankshaw,* their overruling precludes a recurrence of the confusion which *Crankshaw* attempted to abate.

Having clarified the measure of damages applicable to cases such as this one, we turn now to a resolution of the issues herein. Citing one portion of the trial court's jury instructions, appellant contends that the wrong measure of damages as to the breach of contract claim was given the jury. We agree.

The trial court instructed the jury that, if appellant had breached the contract, appellee was *not* entitled to recover his profit, but only the value of the material furnished and labor done up to the time of the breach. That charge was clearly erroneous since it excluded an element of the damages recoverable by appellee. However, the error does not require reversal. The erroneous charge had the effect of limiting *appellee's*

recovery to only a portion of what the correct measure of damages would have permitted. Thus, the error was harmful only to appellee not to appellant. "To obtain a reversal of the judgment of which complaint is made, the burden is upon the plaintiff in error to show not only error but injury. [Cits.]" *Avary v. Avary,* 202 Ga. 22, 27 (41 SE2d 314) (1947).

2. Appellant's first and third enumerations of error complain of the trial court's failure to grant appellant's motion for directed verdict, judgment notwithstanding the verdict and new trial, contending there was no evidence by which the jury could calculate the damages with any degree of certainty. The record does not support appellant's contention. The contract price, the amount of progress payments, the amount of appellee's expenditures, and his estimate of the cost he was saved by the breach were all in evidence. The jury had sufficient evidence by which it could determine damages with a reasonable degree of certainty. *Lingo v. Kirby,* 142 Ga. App. 278 (236 SE2d 26) (1977).

*Judgment affirmed. Deen, C. J., and Shulman, J., concur.*

SUBMITTED SEPTEMBER 6, 1979 — DECIDED FEBRUARY 1, 1980.

*Thomas M. Strickland,* for appellant.
*Edward Tolley,* for appellee.