75596, 75597. ENERGY CONTRACTORS, INC. v. GEORGIA METAL SYSTEMS & ENGINEERING, INC.; and vice versa.
(367 SE2d 324)

SOGNIER, Judge.

Georgia Metal Systems & Engineering, Inc. (GMS), a subcontractor, brought an action against Energy Contractors, Inc. (EC), its general contractor, and EC's president, Alex Jordan, alleging that EC had breached its contract by wrongfully terminating GMS from a particular construction job, and that both EC and Jordan had tortiously interfered with its contractual relations. EC answered and counterclaimed for damages against GMS, alleging that it, and not EC, had breached the contract in question and others and that GMS was guilty of fraud in its performance of the contracts. At the close of GMS's evidence, the trial court denied EC's motion for a directed verdict based on GMS's failure to prove its damages, but granted Jordan's motion for a directed verdict and dismissed Jordan as a defendant. The trial court subsequently granted EC's motion for a directed verdict as to the tort claim. The case went to the jury on the claim for breach of contract, and the jury returned a verdict in favor of GMS for $20,000. Both parties appeal.

The evidence at trial showed that EC and GMS entered into a written contract whereby GMS was to fabricate and install an air conditioning ventilation system at a project known as Charles Evans BMW. EC and GMS also entered into an oral contract whereby GMS was to perform similar services at a project known as Lawrenceville Medical/Dental Center.

After GMS had initiated work on these projects, EC terminated

its manager in charge of the Charles Evans BMW project, Robert Tiller. Shortly thereafter, Tiller began working for GMS. Jordan did not want Tiller working on EC's projects as an employee of GMS and, by letter dated May 28, 1985, Jordan informed GMS "[t]he next time [Mr. R. H. Tiller] steps foot on one of [EC's] jobs I will . . . [r]emove your Firm from the job, . . . [w]ithhold all payments until such time as the job is complete whereupon all charges for completing your portion of the work will be deducted from any monies due you, . . . [o]btain a Restraining Order, and . . . [, i]f necessary obtain a Bond to satisfy any Lien you might record. I regret this action but I will not tolerate immature and unprofessional individuals even remotely associated with our Company." GMS received four other letters from EC, dated May 28, 1985. In one of the letters Jordan threatened to repudiate the GMS/EC construction contracts if certain demands were not fulfilled by EC and, in another letter, Jordan threatened to "[o]btain a Restraining Order and . . . File Suit against . . ." GMS if Mr. Tiller "contacts" EC's office.

Via letters dated May 29, 1985, EC repudiated its Charles Evans BMW and Lawrenceville Medical/Dental Center contracts with GMS, ordered GMS to leave the construction sites and advised GMS that both projects would be completed by other resources, the cost of which would be deducted "from [GMS's] original quotation . . ."

1. In the main case, EC contends the trial court erred by admitting into evidence certain of its intra-office memoranda, because they were not relevant and were introduced to inflame the jury. " 'Any fact is relevant which, when taken alone or in connection with another or others would warrant the drawing by the jury of a logical inference with reference to the issue on trial.' [Cits.]" *Pope v. Triangle Chem. Co.*, 157 Ga. App. 386-387 (1) (277 SE2d 758) (1981). In the case sub judice, the intra-office memoranda shed light on EC's motives for breaching the contracts with GMS. " 'Questions of relevancy of evidence, which includes the issue of materiality, are for the [trial] court, and in the absence of an abuse of judicial discretion, this court will not interfere.' [Cit.]" *Metro. Property &c. Co. v. Shepherd*, 166 Ga. App. 300, 301 (1) (304 SE2d 74) (1983). We find no abuse of that discretion here, and consequently the trial court did not err by admitting into evidence the intra-office memoranda. See generally *Smith v. State*, 255 Ga. 685, 686 (2) (341 SE2d 451) (1986).

2. EC next maintains the trial court erred by failing to grant its motion for a directed verdict, arguing that GMS failed to carry its burden of proving damages. In this vein, EC contends that the jury's $20,000 verdict was not supported by the evidence.

"The basic component of damages recoverable by a contractor when a construction contract is wrongfully breached . . . is the net profit to which the contractor would have been entitled had full per-

formance of the contract been permitted. That figure is reached by subtracting from the contract price the amount which full performance would have cost the contractor. If performance by either party had begun prior to the breach, adjustments must be made to ensure that the contractor receives the full amount of the profit, but no more. First, there must be added to the profit figure the amount of the contractor's net loss up to the point of the breach. That figure is reached by subtracting from the expenses incurred by reason of the contractor's performance the salvage or resale value of the material left on hand. The sum of those figures (the profit which would have been realized from full performance plus net loss incurred by performance to the date of breach) may in no event exceed the contract price. Second, there must be deducted from the recovery those amounts received by the contractor from the owner as prepayment or progress payment." *Williams v. Kerns*, 153 Ga. App. 259, 260 (1), 266, 267 (265 SE2d 605) (1980).

In the case sub judice, GMS presented evidence showing that the contract price for the Charles Evans BMW project was $30,000; that the amount of contract "extras" (items authorized by EC to be added to the contract price) was $2,504.15; that the total amount of progress payments paid by EC was $13,500; that the amount of "invoices" (expenses) unpaid by EC was $13,215 and that the amount of GMS's lost profits was $734. Applying the above formula, this was sufficient evidence upon which the jury could determine damages within a reasonable degree of certainty. See *Williams v. Kerns*, supra at 268 (2), and Cobb & Eldridge, Ga. Law of Damages (2d ed.) § 17-17. Further, in light of GMS's evidence regarding attorney fees, interest and other expenses incurred by GMS as a result of EC's alleged "bad faith" in breaching the contract, we do not find the jury's verdict of $20,000 to be unreasonable. Consequently, the trial court did not err by failing to grant EC's motion for directed verdict, and the jury's verdict was not disproportionate to the evidence adduced at trial. Compare *Story v. Monteith*, 180 Ga. App. 517 (349 SE2d 760) (1986).

3. Lastly, EC asserts the general grounds, arguing that there was no evidence upon which the jury could have found against EC on its counterclaim for breach of contract against GMS as to the Lawrenceville Medical/Dental Center project. We do not agree.

"In the absence of legal error, an appellate court is without jurisdiction to interfere with a verdict supported with some evidence, even where the verdict may be against the preponderance of evidence. [Cits.]" *Thompson v. Hill*, 143 Ga. App. 272, 275 (4), 276 (238 SE2d 271) (1977). In the case sub judice, not only was there conflicting evidence as to the subject matter and terms of the oral contract for materials and services to be supplied by GMS at the Lawrenceville Medical/Dental Center project, but there was evidence which author-

ized a finding that EC breached this contract by ordering GMS off the project prematurely.

4. In the cross-appeal, GMS' sole enumeration of error is that the trial court erred by granting EC's motion for a directed verdict on the issue of Jordan's personal liability for tortious interference with contract, because there was evidence in the record from which the jury might have concluded that Jordan was not acting for the corporation, but from personal feelings of malice toward Tiller.

Unlike the situation in *American Game &c. Music Svc. v. Knighton*, 178 Ga. App. 745, 746 (1) (344 SE2d 717) (1986), Jordan cannot be found liable personally on the basis that he took part in the corporation's commission of a tort, since the tort alleged here is interference with contractual relations, which requires intentional and improper interference with the performance of a contract between *another and a third person*. The corporation, being a party to the contract here, is not a third person and thus, by definition, could not have committed the tort. Accordingly, Jordan's individual liability cannot be derivative. Based on the facts in the case sub judice, it can be premised only on evidence piercing the corporate veil by showing that he acted outside the scope of his employment, in disregard of the corporate entity, or in derogation of the corporation. See *Alexie, Inc. v. Old South Bottle &c. Corp.*, 179 Ga. App. 190, 193-194 (5) (345 SE2d 875) (1986).

The dissent concludes that the letters and memoranda from Jordan are themselves evidence that he was acting to vent his own feelings of animosity, and not within the scope of his employment or authority. However, the record amply demonstrates that the dispute between Jordan and Tiller was not a personal one, unrelated to the business of the corporation, but rather that it centered about Tiller's actions and performance as an employee of Energy Contractors. Job performance was the reason for Tiller's dismissal, and Jordan's allegations that Tiller was recruiting Energy Contractors' employees for his new employer while on the job together were the main basis for the post-dismissal dispute. Without more, we cannot say that the contents of Jordan's correspondence demonstrate that he was not acting on behalf of the corporation. The letters were signed in his capacity as the corporation's president, and it is well established that the president of a corporation is presumed to have authority to act for the corporation in matters relating to and within the scope of its business. *Long Tobacco Harvesting Co. v. Brannen*, 99 Ga. App. 541, 545 (2) (109 SE2d 90) (1959).

Since Georgia Metal Systems did not meet its burden of overcoming the presumption that Jordan was acting in his corporate capacity, we affirm the trial court's grant of the motion for a directed verdict as to Jordan's individual liability for tortious interference

with contractual relations.

*Judgments affirmed. Birdsong, C. J., Deen, P. J., Carley, and Pope, JJ., concur. McMurray, P. J., Banke, P. J., Benham, and Beasley, JJ., dissent.*

McMurray, Presiding Judge, dissenting.

The majority relies on the concept of "piercing the corporate veil" in determining whether an action for tortious interference of contract can be sustained against Jordan. This theory does not belong in this case.

"The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party 'has overextended his privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud or to evade contractual or tort responsibility.' *Kelley v. Austell Bldg. Supply*, 164 Ga. App. 322, 326 (3) (297 SE2d 292). See also *Bone Constr. Co. v. Lewis*, 148 Ga. App. 61, 63 (4) (250 SE2d 851); *Fla. Shade Tobacco Growers v. Duncan*, 150 Ga. App. 34, 35 (256 SE2d 644)." *Hogan v. Mayor &c. of Savannah*, 171 Ga. App. 671, 673 (3) (320 SE2d 555). In the case sub judice, we are not concerned as to whether Jordan overextended his privilege in the use of a corporate entity in order to defeat personal liability for breach of contract. Instead, the pivotal issue is whether Jordan stepped outside his role as a corporate officer, breaching his duty to act in the best interests of the corporation (see *Quinn v. Cardiovascular Physicians*, 254 Ga. 216 (2) (326 SE2d 460)), and acted as a *third party* to vent his own personal feelings of animosity against one of Georgia Metal Systems & Engineering, Inc.'s employees.

"One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." Restatement of Torts 2d, § 766. "In determining whether an actor's conduct in intentionally interfering with a contract . . . of another is improper or not, consideration is given to . . . the actor's motive [and] the interests sought to be advanced by the actor . . . ." Restatement of Torts 2d, § 767 (b) (d). The interest of gratifying feelings of ill will toward another will generally not justify interference of contract by a corporate officer. See Restatement of Torts 2d, § 767, comment on clause (d). See also Restatement of Torts 2d, § 769 comments on clauses (d) and (e).

"A directed verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced together with all reasonable deductions and inferences therefrom demands a particular verdict. OCGA § 9-11-50 (a); *Tri-Eastern Petro.*

*Corp. v. Glenn's Super Gas*, 178 Ga. App. 144, 145 (1) (342 SE2d 346) (1986)." *Beard v. Fender*, 179 Ga. App. 465 (346 SE2d 901).

In the case sub judice, after examining the entire trial transcript and record, I find there was ample evidence to support a conclusion that Jordan's actions were personally motivated, were in breach of his duty as a corporate officer and were in interference with the Georgia Metal Systems & Engineering, Inc. ("GMS")/Energy Contractors, Inc. ("EC") contractual relationship. Consequently, the trial court erred in directing a verdict in favor of Jordan on the issue of tortious interference of contract. See *American Game &c. Svc. v. Knighton*, 178 Ga. App. 745 (1) (344 SE2d 717), and cits. Compare *Georgia Power Co. v. Busbin*, 242 Ga. 612, 613 (2) (250 SE2d 442).

I am authorized to state that Presiding Judge Banke and Judge Beasley join in this dissent.

DECIDED MARCH 18, 1988.

*Dana B. Miles, R. Timothy Hamil*, for appellant.
*Robert L. Littlefield, Jr.*, for appellee.